Your Honor, the first case of the morning is called 212-270, People v. State of Illinois v. Stevenson v. Kucharski. On behalf of the Appellant, Mr. Richard Dvorak. On behalf of the people, Mr. Marshall Stevens. Mr. Dvorak? Dvorak or Dvorak? Dvorak. Dvorak. Yes. Counsel, if it may please the court. Your Honors, any time that, whether it's Congress or a state legislature or a local legislative body, has tried to regulate expression, it's always fraught with perils. And I think we know that from the R.A.B. case with racist language, the Hustler case with the outrageous cartoon line about serving in the military with the Stevens case. And particularly when Congress or another legislative body, such as a state legislature, tries to go in and regulate the Internet, it's even more particularly fraught with peril because it's such a bastion of free expression. Right. But aren't we regulating, aren't they regulating conduct here as opposed to expression, Counsel? Well, I think if you, I mean, count by count is different, but if we would take the first count, the obscene with intent to, with offend, I think it's clearly expression that they're regulating because. No, you said the first count. Count one is, we're not talking about count one, so you really mean count three. Count three, you're right. You're right, Your Honor. I dealt with count three first because it has the most obvious first element. Okay, so with respect to, I'm sorry, so start again with count three. So, so, so it's, it's clearly content based expression that they're trying to regulate because we already have obscenity laws on the books. And while they may be outdated, I think in this modern world, that's not for this court to decide. That's because the Supreme Court and the Illinois Supreme Court has. I just want to clarify something. The victim was not erroneously claiming to be a Congressional Medal of Honor winner, was she? On the, in this case? Well, you brought up the, whether or not it was constitutional, so I thought possibly in addition to the photographs, this wasn't about her claiming or him putting words in her mouth to the effect that she was a Congressional Medal of Honor winner. No, no, I, I merely cited to that case and other cases to show how we have to be so careful when we try to regulate free expression. And I think when you do compare the language and the expression used by the defendant in this case versus those other cases, I actually think it's mild in comparison to some of the actions that were upheld as constitutional free expression in those cases. How is this any different than telephone harassment laws? I think telephone harassment laws are much different because I think the state cited to certain cases that date back to the 70s usually. And in those cases, what they're trying to regulate. That was before caller ID, right? Exactly. And what, what those cases are trying to regulate is the invasion of privacy into the home. And I think in this case, we have someone who has a World Wide Web literally open to the world, and I think you can't have that same analogy, I think. Wouldn't it make it even more aggravating in light of the fact that it's open to World Wide Web? Because what we, what you are, what, what the legislature was doing here was not restricting the speech, but restricting the conduct, weren't they? No, I don't think so at all. Because if you look at the language of the statute, it says that you cannot use electronic communications, just say the Internet, to use obscene language with the intent to offend. That's the very definition of content. It's only going to be regulated if you did it with the intent to offend someone. And you're only going to regulate it if it was actually obscene. And the only way to determine if something is obscene is to look at First Amendment case law. Is that, is that the only way you look at the definition of obscene? Hasn't it been looked at differently? Well, I think the only cases that have looked at it differently have been U.S. Supreme Courts that say if you do not use the Miller test, then the term obscene is inherently vague. And that's why the... Well, but there's a dictionary definition of obscene, correct? Against morals, something that's offensive, the regular dictionary definition. And the regular dictionary definition in the context of free expression is extremely vague because one person's morals are obviously much different than another person's morals. And that's why the Supreme Court even came up with the Miller test in the first place, because they weren't just going to say we're going to leave this very, very, very broad language up to a jury to decide or a trier fact to decide. But the Miller test is used really to apply to communication of thoughts, ideas. This again, I mean, we're still coming back to the same point of regulating conduct. Well, the Miller test is also used to evaluate pornography, for example. And pornography is an art. Well, I should say art obviously sometimes does convey a message, but sometimes very offensive things that are not out there to convey a particular idea. And yet the Miller test is still used in those kind of prosecutions. Well, how about the Hernandez case? I'm sorry, the Hernandez case is, I'm not familiar with it by name, Your Honor. The Hernandez case, it applies a definition of obscene when interpreting electronic harassment statute. Hernandez 231, California Appellate 3rd. And the legislature here in Illinois looked at the electronic harassment akin to a telephone harassment. Did they not? Yeah, I guess, Your Honor, I would go back then to, I believe the Hernandez case, now that I think about it, is that the one that actually never decided the issue. They just used some language that was seized upon by the state. So it's not really an issue in that case. Obviously, it's an outside jurisdiction as well. But again, I think I'd go back to the fact that those telephone harassment cases were meant to regulate the invasion of privacy into the home. And again, to kind of go back to the question that Your Honor earlier posed, well, isn't it more aggravating that it's on the Internet open to all? I'm sure it makes the impact that much more hurtful to the victim. However, we're not looking at it from the perspective of how hurtful it is to the victim. We're looking at it from the perspective of how you regulate free speech. And in that case, I'm sorry. I believe you argued that it was unconstitutional on its face and as applied, did you not? Yes, sir. Could you explain further what you meant by as applied? Yeah, as applied I think would be all wrapped up in the reasonable doubt argument. And really basically it comes down to I think you have to employ the Miller test because that's the only way that we can really legitimately say what is obscene and not obscene. What if on the website he suggested or stated that she was willing to have sex for money? Would that not be a crime? Would that not be constitutional to the extent that as applied he's making representations that would be deemed to be libel or slander? Well, I would certainly think that if she wanted to bring a civil suit for libel or slander, that would be one thing. I'm not saying it would be constitutional or not unconstitutional to do that in light of, for example, the Hustler case. Because in the Hustler case, I think what was said in that Hustler case was much more offensive than what was done here, now that I'm defending what was done here. But in this case, we have a criminal case that's going to put someone in jail for their expressions. And I think that's why it's so important to adhere to the Miller test because for decades the Supreme Court has said that is a test that somehow acts as a barrier between moral police and legitimate first amendment expression. Is the password encryption? I'm sorry? Is a password encryption? Well, if Your Honor is asking as regarding count four, which is the definition of encryption, it's impossible to answer that because that definition is so convoluted, I don't know what it is. I suppose one could... Is it unconstitutionally vague? Yes, it is, Your Honor. Just one quick thought on the count three and then we'll move on to the next count, and that is the fact that the Seventh Circuit in Kucharick and then the... No, so can I go back to the issue again? Sure. Have you thought about the alternative argument that even if it isn't vague, a password is not encryption? Well, again, let's put it this way. What would a reasonable person, assuming that there are a lot of reasonable persons in Springfield, if they were to legislate and use the definition of encryption, would it include password or would it relate to creating an alphanumeric key that would, upon usage, create gibberish on the screen? I think it would be the latter, Your Honor. And so in that sense, I think a password would not be encryption. But again, it's so vague that I don't know how we'd get there in the first place. Aren't statutes supposed to be interpreted reasonably? If it can be done so without totally rewriting the statute, and I think what the state tried to do is totally rewrite the statute. And even then it was vague. You said totally rewrite the statute or totally redefine what encryption is? Totally redefine what encryption is, using its own language that did not come from any particular source like a dictionary. Kind of like Humpty Dumpty? It would sort of be like that, I guess. Or it could mean anything I want it to mean? That would be an appropriate… The greater the usage, the more valuable the word is? Well, if we have an accepted usage of encryption that is understood in the law, I'm not aware of any case that has come up with an acceptable language of encryption. And I don't think the state never proposed, and I don't think there is an acceptable definition from the dictionary of encryption. Instead, there's this convoluted definition in the statute. So moving on to count two. Count two. I'm sorry, I keep confusing that. Back to count three? No. Oh, yeah, I did want to make one more point about count three. Count three, the obscenity statute, again, if we look at Kucharik and RAB, I think those are prime examples of content-based discrimination. Meaning, it's one thing to say we're going to regulate obscenity, which is upheld as constitutional as long as you use the Miller test. But it would be unconstitutional to only prohibit certain types of obscenity. The Kucharik case, I believe, used the analogy of political speech, but obviously that's a more extreme example. But I think even in this case, what we're doing is we're discriminating based on offensive obscenity. Versus what the statute is saying is that if it's obscene, it's fine. But if it's obscene that's used to try to offend someone, well, then now it's unconstitutional. That's conduct as opposed to content, isn't it? Well, but I think it's the expression. I think you have to look at the expression to say whether it's offensive or not. And that's why I think it's not conduct. How about the Bergman v. D.C. case, which was cited in R.A.V., the case that you rely heavily upon? In the Bergman case, it states speech may not be prescribed because of the ideas that it expresses, but it may be restricted because of the manner in which it is communicated or the action that it entails. Isn't that content? But the language of this is not content because the language of this says with the intent to offend. That's inherently about the message. It's not about the conduct. Isn't this one of the unusual situations where somebody is presenting themselves as someone else and that the language that is being used is being used as if it were coming from the victim when in fact it isn't? So it's not like Mr. Smith goes to Washington and he gets on a soapbox and he says certain things. It's Mr. Smith impersonating Mr. Brown and saying libelous or slanderous or politically incorrect things. So this is kind of an unusual situation where, as Justice Zenoff said, this is more like conduct in the sense that this isn't merely just talking. This is misrepresenting the identity of the speaker. But that's not what's charged in any particular count. That was charged in count one, attempt identity theft, but that was found to be unconstitutional. Well, then why does your client have standing to contest it if your client allegedly wasn't the person that supposedly said these things? Well, that's just a reasonable doubt argument. I think obviously I've not gotten to that as well. But if he is indeed found to be the person who's doing it, then he has standing. I'm obviously saying there is not enough evidence to tie him to that offense and to make him guilty of the offense. But to the extent that a court has found differently, I think obviously he would have standing to prove that. Before you move on, this is, and I think you're arguing that it is not similar to the obscene phone call act. But didn't Representative or State Senator, State Representative Burke and State Senator Redonio amend the obscene phone call act to include electronic communications? Your Honor, I think the way I read the comments of the legislators, I think it was the same in the State's brief, was that, well, this is an update of the telephonic harassment statute. But they did not amend that particular statute. They came up with a whole new statute. Correct. And then used a whole new language. Correct. But then didn't they use in the telephone harassment statute, they used the definition of obscene to be the dictionary definition. So wouldn't it flow that they would use obscene definition in the dictionary under this statute as well? Well, because I can't challenge that statute, and I don't believe it has been challenged, what I would argue is, using the dictionary definition of obscene, the Supreme Court has, U.S. Supreme Court has already said, is vague. And you can't use the definition of it. You have to use the Miller test. So in other words, what Your Honor is saying is, shouldn't we use the definition of obscene in the other statute? But what I'm saying is, that language is itself unconstitutional, even though I don't have the, I can't challenge the standing of that other statute, because he's not charged with that statute. Well, other States have used the obscenity definition, dictionary definition, in telephone harassment as well. I don't remember reading any of those cases that have said how that comports with Miller. Whether they've used that language doesn't mean it's constitutional. Because clearly the Miller test. Well, it's not been found unconstitutional. Yes, but if this Court wants to use that as an example of it being constitutional, I think that would be improper, because it hasn't been held to be constitutional. And what is. Don't we assume it's constitutional? I mean, in another case, Baker v. Estate, which is Arizona, they interpreted obscene as the ordinary dictionary definition. And I believe it was a California case I mentioned as well. And Illinois. Nobody has challenged it. Nobody has found it to be unconstitutional. So why should we just go on the premise that it's unconstitutional, as opposed to constitutional? Because we know that Miller says it's unconstitutional. And this Court is bound by Miller. It's not bound by the other State courts. But what was Miller, what were they disseminating in Miller? Well, Miller was, I believe it was Arthur Miller. Content-based. Content, yes. And again, obviously, I'm arguing this is content-based because it's obscenity with intent to offend. Your time is up, unless Justice Shostak has any other questions. No. Just briefly, I'm going to let you comment on the unlawful use of encryption. You touched on that with Justice McClaren. And the electronic harassment, the interruption of the electronic harassment, you didn't get to touch on that as well. But your position is that it's vague also? Yeah, my position is that it's vague. I think it does touch on First Amendment concerns. And also, too, I think in a footnote in my reply brief I indicate the various ways the State has said that the defense supposedly interrupted. And the State can't even say what interrupted means in this case. So it's sort of a, it's vague, it touches the First Amendment, and there's reasonable doubt as implied issues. Thank you. Do you have a chance to make a rebuttal? I do have time for a rebuttal.  Good morning, Your Honor. Good morning. With regard to the first argument, which involves count three, I don't really have too much to say. It seems like the concepts have been brought out. Well, does it involve conduct, or do you agree with counsel? Totally conduct. Okay, why do you disagree with counsel? Because, yeah. Why we shouldn't agree with your opinion? Because this is conduct which uses language, because it is intended to foster in the victim the effect of causing mental distress. But by using speech, which relates to content, as counsel indicated. It uses speech, but as a great number of the cases that I cite in my brief point out, simply because speech is part of it. Speech and non-speech elements can be mixed together, but I think what you can draw from the cases is that the overall point is what does the legislation seek to do? Does it seek to stifle the communication of an idea, or does it seek to contain conduct? I don't think there's too much trouble in this case, because this was a very direct impingement on Shelley Bird's private, well, not private, but her communication interests. It wasn't the defendant. It was her MySpace page that was affected. Let me say that the state would have no power to prevent the defendant from expressing his opinion of Shelley Bird in some other venue. If it was on his MySpace page, he'd be free to do it, just as McLaren suggested. Then he could do it, and he would be amenable to a libel or slander prosecution. Anybody could do it. There would not be a prior restraint of that or any intent to restrain it by the state. That would be a private tort. So what's the difference, then, if he does it on a page that they jointly created? They did not jointly create it. I completely disagree with the defendant's view of the facts. Shelley Bird said it was her MySpace page. I think that fact stands. She said she changed the password five times after they broke up to make sure it was her page. The defendant didn't testify. He didn't. There was no countervailing evidence that it was anything but her page. She said that she enlisted the defendant's aid because she wasn't very good at computer things, and she asked the defendant to set it up for her. It was her page. I think there can be no question about that on these facts. If it was a joint page, then we'd be talking about something else. It's her page. Even if it is content, as you set out, the defendant thinks that there was insufficient evidence to show he was indeed the one who altered the page and that the alterations were not obscene. But forgetting about obscenity or obscene right now, was there sufficient evidence? And what is our standard of review on count three? Shelley Bird said that it was her MySpace page. There was testimony that she became aware of the change. She called the defendant. I don't know how much. Well, this must have come from the case. Well, she confronted him, and he never denied it. He didn't deny it, and he said, you deserve it. He started laughing and didn't change it. Well, wasn't the photograph on the site also taken from his phone, which would suggest that he had custody of the image prior to its placement on the website? Absolutely. That is correct. She said it was taken by his phone. There's no counterfeiting evidence to rebut that fact. The defendant's evidence was just his father who said, essentially, my younger son took it off. That doesn't really rebut the state's evidence. So does that answer your question? Did he say that the younger son had showed him some indecent photos of her previously, which would infer that the young son had access to these photos of this woman? I don't recall that. I'm sorry. What is our standard of review on count three? Just a standard would, regarding the evidence in the light most favorable to the state, would any rational threat or effect uphold the conviction. So it was all circumstantial, basically. Right. But I think it was a good circumstantial case. What about the electronic harassment, the interruption? The interruption. Which is count three. OK. That in, let me put it this way. Your opponent states it's vague, that that statute is vague. Why is it not vague? All right. Well, that would be, that's not encryption. That's still, we're still on interruption. Count two. I'm sorry? Count two. Right. Right. Was it based on changing the password? Was count two based on that? I have to admit, I believe I made a mistake in saying that it wasn't. It affected my argument two and three. I do think that the way, I think that I would agree with the defense that the way that it was argued below was that the password and the changing, but the password, was the interruption. The change and making the change permanent via the password change. If that were the case, then how would changing the password, would it be a one act one crime relative to the encryption violation and the harassment for the interruption? That's what I had in my mind when I argued this. Let me tell you, because this is an all over the place case, I asked my colleagues to meet with me yesterday. And after that discussion, I believe that there is no one act one crime violation between encryption and harassment by obscenity because they're two separate acts. And that was the point of, it's charged that way. And that's the point of section, excuse me. The section of that statute? If it isn't, then why would encryption in and of itself be a crime? It isn't in and of itself. It's the encryption when it's in the service of fostering. Permission of a crime. So there's the crime, which is the separate thing, which would be the harassment by obscenity, which is when it was charged in count four. And then there's the addition of encryption to that. Well, is one of the lesser included? No. No, I don't believe so. Your position was that the interruption of her service occurred when he removed her original MySpace. That's what I argued in two. Right. And the defense is that the interruption occurred when the password was changed. So isn't it encryption also encompass the change? I think it could be read that way. It may be too fine a distinction to say, as I originally did, that simply changing it was. But I think the two together certainly would be. In that case, there'd be one act, one crime between. Four and two. And four. Right. So I hope I've corrected that. Our movie yesterday was very valuable in correcting my mindset on that point. But I do think that because the encryption was charged separately and very specifically as encryption plus crime. You know, you don't have one crime problem between those two, between three and four. You might between two and four. I leave that to your discretion. Is encryption changing a password? Yes. And all I can do is rely on you. Was that the discussion on the floor, the legislative intent of encryption? I don't recall that there was. Explain how encryption is changing the password. I'm sorry? How is encryption changing the password? Well, it's a process. The statute is very broad. I have all the methods that can constitute encryption. Is it broad or is it vague? Broad. Shoot. I don't know that. Let me just read it to you. The legislative history from Representative Crespo stated that by encryption we mean altering the file using a secret code, secret code, to prevent law enforcement from tracking down the person sending the file from the computer. It provides a tool for law enforcement to go after criminals who hide behind computers and encryption to commit their crimes. So do you think by that definition, by that discussion, that the password is an encryption? It's definitely an encryption. It's a code. It's a code that only, well, now the defendant knows. That's the point of it. It's a lockout, just as encryption is always intended to be. If I took a message and put it in a safe, would that be an encryption? Because I have, quote, unquote, locked you out? Not within the terms that were defined. If I change the combination of the safe, if you knew it, would that be considered an encryption? Because I've changed the encoding of the safe, even though the message remains the same as it was before and after it was put in and taken out from the safe. Are you committing a crime? Pardon? Are you committing a crime? No, I'm not asking if you're committing a crime. I'm talking about whether or not you, quote, unquote, encrypted the message. You haven't. Normally encryption, at least based upon my understanding and background, you're affecting data in such a way that it cannot be analyzed, read, digested, contemplated, whatever. Whether or not you allow access to a file through a password is not the same thing as altering the face of the message. Have you ever looked at an encrypted message? Yeah. Have you been able to read it? You can read it to the extent that it may have an alphanumeric melange, a stream of numbers and letters, but they will not be coherent. They will not spell words. They will be essentially gibberish. Okay. Well, I'd suggest that Shelley Byrd experienced that same feeling when she put in her username to change her MySpace page, and then she put in her password, and nothing happened. There's just dot, dot, dot. In that sense, it would be like what you're suggesting. So you're telling me that with these Facebooks and other services, access through a backdoor relative to a password, which then opens up a panorama of easily read data, is the same thing as having that data written up in such a way that you cannot decipher what it means? The definition says disrupt. Disrupt, let's see. If the definition is so broad, then why is this not so vague as to preclude a reasonable person from understanding what it was that he's supposedly guilty of if, in fact, he doesn't? You know, it reminds me of the case about dangerous snakes. You know, well, they had expert testimony as to what a dangerous snake was. All the legislature had to do was say if a snake is longer than X number of millimeters, centimeters, inches, feet, whatever, or over a certain weight, it is deemed to be a dangerous snake. No, they had to just say a dangerous snake and never define what a dangerous snake was. Most people consider a snake this big and this small to be dangerous, okay, but an expert might not. So it would be nice if they would explain, you know, or put it another way, define things in terms that Merriam-Webster might recognize. Well, again, it's going to be a problem. I understand your position. You're proselytizing on behalf of physicians. Right. There is a definition of encryption. But have you ever bought a program to determine what your password might be? No. Okay. You mean to generate a password or a secure password? Well, I know that there are programs that will alter your password on an ongoing logarithmic or a logarithm procedure. But that's not the same thing as encryption because what it's doing is changing the password each time. Encryption doesn't necessarily change things each time. It might, but it doesn't usually. I'm not familiar with that. Well, you can get rotating encryptions where they're so good that the State Department doesn't allow them to be exported. I hear that my time is up. I think it is, unless people have questions. Thank you. Thank you very much. He's anxious to sit down. Do you have a site for that thing, the snake booth? I can look it up. I remember reading it and laughing when I read it. I'll tell you very briefly about this. Counsel indicates that some conduct has some speech elements. Well, I would say the reverse of that. All speech involves some conduct as well. I think if you look at every First Amendment case, there's conduct. There's publishing an article. There's burning a flag. There is actually going out there and seeing you have these medals that you don't. They all involve conduct. The question is whether or not the statute is designed to discriminate based on content. And then I want to very briefly go on. I think it's absolutely crucial when we talk about the reasonable doubt issues in these cases, and he has applied, that this is not Shelly Bird's account. This was a shared account. The defendant paid for the account. He set up the account. It was a shared email. There were shared passwords. This was their account. It was her MySpace page, though. Well, she can say it's my MySpace. Just like he can say it's my MySpace. This wasn't an OurSpace account, though. But she allowed them to both have access to it. If she wanted truly her own, quote, unquote, MySpace, if she wanted my MySpace, she could have set up her own account. But when she broke up, when they broke up or parted ways, whatever, she changed the account. She changed her own computer password so that he would not have access to it, didn't she? Well, I think that's where we have to sort of understand the technology here. What she's doing is changing the password. And when you change a password, anyone else with access to an account also knows that password and can change it back. They were having a fighting of changing each other's passwords is what was happening. So you can change the password, but you can't change a password to your own account without a fellow account holder knowing that password. And that's how, because it's sent to your email. Did she know that your client had an email account that was attached or connected to this MySpace account? Well, it was called Shelly and Steve at Yahoo, and it's required to set up the account. So I can't imagine she didn't know that. No, don't imagine. I'm asking you, what did the record reflect? Did she testify that she was aware that he had an email account that supposedly whenever the password was changed, the password change was sent to the Steve and Edie account? Well, I believe she never testified whether she knew or not. And the only evidence was from David Chesay, I believe, who testified that this was a shared account. And obviously the defendant's father as well. So it's really not the only evidence in the record is that it was a shared account. With that, unless there's any more questions, I would rest. Okay. Thank you. Thank you, Your Honor. We'll do a short recess. There are other cases on the call.